JOHN J. O'DONNELL, PLAINTIFF-APPELLANT, v. THE
BOARD OF CHOSEN FREEHOLDERS OF THE COUNTY
OF MORRIS, A CORPORATE BODY POLITIC, AND
THOMAS W. VENNER, DEFENDANTS-RESPONDENTS.

Argued December 8, 1959—Decided February 8, 1960.

*Mr. Charles M. Egan, Jr.,* argued the cause for the plaintiff-appellant.

*Mr. Elmer S. King* argued the cause for the defendants-respondents.

The opinion of the court was delivered by

PROCTOR, J. The plaintiff appealed from an adverse judgment entered in the Law Division. While the appeal was pending in the Appellate Division we certified the cause on our own motion.

The plaintiff, a taxpayer of Morris County, brought the action to set aside identical resolutions passed by the Board of Chosen Freeholders of Morris County at the annual organization meetings of the board on January 2 of the years 1957 and 1958, and by supplemental complaint he challenged an identical resolution passed on January 3, 1959. Each resolution directed that during the ensuing year "the Treasurer of said County pay to each Freeholder the sum of $100 per month payment for travel and incidental expenses in line of duty as a member of the Board of Chosen Freeholders of the County of Morris." The plaintiff charged that the resolutions were void as being without legal authority and demanded (a) that the defendant Venner, as county treasurer, seek reimbursement of all sums paid to the members of the defendant board pursuant to the resolutions, (b) that further payments be restrained, and (c) that Venner obtain an itemized accounting of all expenses allegedly incurred by the members of the board since January 2, 1957.

The defendants denied the invalidity of the resolutions and contended that they were passed for the proper purpose of defraying the cost of necessary expenditures made by members of the board in performance of their official duties.

They further asserted that all sums paid to them pursuant to the resolutions were actually used for that purpose.

Morris County is governed by a "small" board of chosen freeholders under the provisions of *R. S.* 40:20–2 *et seq.,* and the board is composed of five duly elected members. The maximum salaries of members of the board in counties in Morris' population class were at the time of these resolutions fixed by *N. J. S. A.* 40:20–72(*c*) at $6,000 per annum, with an additional $500 for the director. That statute further directs that these salaries "shall be in lieu of all fees or other compensation," a limitation that has been carried over unchanged from the act revising the compensation of members of such boards. *L.* 1920, *c.* 14. At the time of the adoption of the resolutions the members of the board were being paid the maximum salaries allowed by the statute.

Pursuant to the resolutions of 1957 and 1958, each freeholder was paid the full sum of $100 every month from the date of the adoption of the 1957 resolution until October 1958, when payments were discontinued by stipulation of counsel to await the outcome of this action. The payments were made to each member of the board upon submission to the county treasurer of monthly vouchers certified by the member to be "for travel and incidental expenses in line of duty as a member of the Board of Chosen Freeholders of the County of Morris for the month * * *." The vouchers neither itemized any expenditure for travel or other incidental expense, nor were accompanied by any supporting statement of such expenditure. They merely set forth the foregoing statements of the members without certification by any other county officer that the expenses had been incurred on behalf of the county.

It is undisputed that the resolutions were adopted at public meetings of the board without opposition, and that appropriations to support them were made line items in the annual county budgets which were approved by the director of local government and duly advertised and passed at public hearings. The plaintiff contended, however, that the resolutions

and the payments made pursuant to them were in effect increases in the salaries of the freeholders in violation of the maximum fixed by *N. J. S. A.* 40:20–72; further, that there was no statutory or other authority for the reimbursement of the freeholders for expenses of any kind; and finally, that the payments were in violation of *N. J. S. A.* 40:5–1 which requires itemization and certification of bills or demands on county funds.

At the trial the director of the defendant board testified that the resolutions fixing the monthly payments at $100 were passed after an analysis of the expenses actually incurred by the members of the board in previous years. The freeholders testified that during 1957 and 1958 their expenses in the performance of their official duties equalled or exceeded the amount of the payments. Each estimated the average monthly mileage he traveled in his own car on county business and other expenses of various kinds asserted to be in connection with his official duties. However, none of the freeholders testified to any particular expenditures or presented any itemized record of his expenses incurred during the period in question.

The trial judge found as a fact that the expenses incurred in 1957 and 1958 by the members of the board equalled or exceeded "the total of their expected yearly allowances." He concluded that the prohibition of *N. J. S. A.* 40:20–72 against paying compensation to freeholders above their annual fixed salaries did not outlaw reimbursement for expenses "requisite to the proper discharge of official duties." He further held that the defendant board was within its rights "in the absence of expressed legislative prohibition" in appropriating funds for such expenses. He decided, however, that expense payments to freeholders were subject to the itemization and certification provisions of *N. J. S. A.* 40:5–1, and he directed that from the date of the parties' stipulation in October 1958 payments for freeholders' expenses could be made only after compliance with the statute. But he declined to order the board and the county treasurer to comply with

the statute as to payments already made, deeming it "unjust to call upon the members of this Board to account for or alternatively to repay monies received for expenditures made in good faith and in service of their official duties * * *." From the judgment embodying the above conclusions the plaintiff appealed. He challenges the holding that payments may lawfully be made to freeholders for official expenses, and further attacks the trial judge's refusal to order that the defendants comply with *N. J. S. A.* 40:5–1 as to past payments under the resolutions. The defendants did not cross-appeal from the judgment directing them to comply with *N. J. S. A.* 40:5–1 beginning in October 1958.

We are in entire accord with the trial judge that *N. J. S. A.* 40:20–72 does not prohibit the reimbursement of freeholders for expenses properly incurred in the performance of their official duties. The statute's direction that the freeholders' fixed salaries "shall be in lieu of all fees or other compensation" does not refer to their official expenses. It merely makes their salaries the exclusive consideration, reward or remuneration for the services they perform. It prohibits freeholders from accepting any other payment for their services, but it has nothing to do with the separate question whether they may receive payment for the proper expenses they incur in the rendering of those services. There are many functions that the freeholders must undertake in the conscientious fulfillment of their duties involving expenditures that they would not be expected to bear in private employment. It would not be reasonable to ascribe to the Legislature the intent to require freeholders to bear out of their own pockets the burden of nonpersonal expenses necessary to enable them properly to perform their official duties.

The constitutions of many states fix or limit the salaries payable to public officials. A problem similar to the one before us has arisen in those states when statutes have been passed to allow payment for expenses to public officials whose salaries are so fixed or limited. The cases split on the question of what allowances can be made without violating the

constitutional limitations. But they all agree that the allowance of nonpersonal expenses necessary to enable the public officials properly to perform their functions is not a grant of extra compensation. See the cases collected in Annotation 5 *A. L. R. 2d* 1182 (1949).

The plaintiff calls our attention to several statutes that expressly allow expenses in addition to or in lieu of salaries. *N. J. S. A.* 18:4–4 (county superintendent of schools allowed actual expenses not exceeding $900 per annum); *N. J. S. A.* 39:4–5 (persons employed by Director of Motor Vehicles allowed necessary travel expenses); *R. S.* 40:41–8 (sheriffs in certain counties allowed actual expenses incurred by them personally in performing their duties, such as transportation, *etc.*); *N. J. S. A.* 4:1–4 (non-salaried members of State Board of Agriculture allowed actual expenses incurred in attending meetings, *etc.*); *N. J. S. A.* 40:23–6.5 (non-salaried members of county camp commission allowed necessary expenses). The plaintiff argues that when the Legislature has seen fit to allow expenses to certain officials and employees it has done so expressly, and therefore where such an allowance has not been expressed it must be assumed that the Legislature intended otherwise. We do not agree. The above statutes and *N. J. S. A.* 40:20–72 were all passed at different times and were parts of statutory schemes enacted to meet different and totally unrelated needs. The provision relating to expenses in each of the statutes mentioned by the plaintiff is different from the others. In these circumstances we do not believe that these statutes and *N. J. S. A.* 40:20–72 can be read together to conclude that a provision for expenses expressed in one or more of them was deliberately excluded from another. See 2 *Sutherland, Statutory Construction* §§ 5201–2 (*3d ed.* 1943).

We conclude that *N. J. S. A.* 40:20–72 limiting the annual salaries of freeholders does not preclude their reimbursement for proper expenses.

We are also satisfied that in the absence of an express prohibition or limitation, the enabling statute from which

a governing body derives its general powers authorizes the payment of proper expenses incurred by its officials. This interpretation is analogous to the rule permitting a trustee to charge the fund in his hands for the necessary expenses of administration. See 3 *Scott, Trusts,* § 244 (*2d ed.* 1956). As Lord Chancellor Cottenham said in refusing to interfere with the payment out of municipal funds for expenses incurred by municipal officials in the course of their duties:

"* * * I apprehend it to be quite clear, according to the rule which applies to all cases of trust, that if necessary expenses are incurred in the execution of a trust, or in the performance of the duties thrown on any parties, and arising out of the situation in which they are placed, such parties are entitled, without any express provisions for that purpose, to make the payments required to meet those expenses, out of the funds in their hands belonging to the trust. Such is the rule of this court; such, also, is the rule at common law." *Attorney-General v. Mayor of Norwich,* 2 *Mylne & Cr.* 406, 424, 40 *Eng. Rep.* 695, 702 (*Ch.* 1837).

The above language was quoted with approval in *State, Bradley, Pros., v. Council of Town of Hammonton,* 38 *N. J. L.* 430, at *page* 433 (*Sup. Ct.* 1876), in which the court held that defraying the cost of defending a suit brought against a public official individually for an act he was authorized to undertake on behalf of the municipality was a "town purpose" within the meaning of the municipal charter.

The right of a public body to reimburse an official for expenses incurred in the discharge of his duties in matters in which it is interested is supported by other cases in this State. In *State, Lewis, Pros., v. Board of Chosen Freeholders of Hudson County,* 37 *N. J. L.* 254 (*Sup. Ct.* 1874), it was held that the freeholders might properly pay the reasonable expenses incurred by a coroner in the out-of-state apprehension of a suspected criminal, and that such an expenditure was authorized by the statute which established the general powers in the freeholders to raise money for "all legal purposes, obligations, business, and affairs of the county." In *Barnert v. City of Paterson,* 48 *N. J. L.* 395 (*Sup. Ct.*

1886), it was held that a mayor of the city who incurred expenses in successfully resisting a suit to compel him to take a course of official action was entitled to indemnification for his expenses by the municipality, and that such was within the city charter provision that he "be vigilant and active in causing the ordinances of the city and the laws of the state to be executed and enforced, and, as far as possible, to promote efficient government in the city."

We have no doubt that *R. S.* 40:23-7 which empowers the freeholders to raise by taxation "all money necessary to pay * * * for the execution and performance of any power or authority given to the county or the board of chosen freeholders thereof * * * and for the fulfillment of all obligations imposed by law upon the county," confers authority upon the county to defray the proper expenses of its officials just as did the statutes and charters in the above cited cases. We conclude that the freeholders could lawfully be reimbursed for their proper expenses. See 4 *McQuillin, Municipal Corporations,* § 12.190 (*3d ed.* 1949).

The question remains whether the board lawfully exercised its authority to reimburse its members. The trial court required that beginning in October 1958 the members of the board "account monthly for their travel and incidental expenses with such degree of itemization as is required of all claimants embraced by *R. S.* 40:5-1, and that such accounting shall be precedent to the payment by the defendant-Treasurer of the allowances granted by the resolution." The defendants in their brief state that "With this decision defendants have no quarrel."

The applicable statute, *R. S.* 40:5-1, as amended by *L.* 1954, *c.* 36, § 1, provides:

"The board of chosen freeholders of any county and the governing body of any municipality, shall not pay any of the moneys of the county or municipality to any person, unless the person claiming or receiving the same shall first present a detailed bill of items or demand, specifying particularly how the bill or demand is made up, with the certification of the party claiming payment that the same is correct. The county or municipality may by resolution require

an affidavit in lieu of the certification called for by this act, and any disbursing officer may take such affidavit without cost.

No claim shall be paid unless, in addition, it carries a certification of some officer or duly designated employee having knowledge of the facts that the goods have been received or the services rendered."

■ This statutory provision applies to payments of county funds to "any person," which includes a member of the board of freeholders. Its obvious purpose is to provide the county disbursing officer with a detailed statement of the claim presented to him, and to insure an adequate public record of county expenditures. An additional safeguard was provided by the 1954 amendment in its requirement that the claim carry a certification of approval by a designated officer or employee.

■ The resolutions here challenged authorized a framework of expenditure of county funds inconsistent with the salutary requirements of the above statute, in that they authorized payment for expenses not yet incurred and without the presentation of an itemized voucher and approval certification. For these reasons we hold that the resolutions are invalid and should be set aside.

Setting aside the resolutions does not dispose of the question whether the payments made before October 1958 to the individual freeholders should be returned to the county treasury. The statutory provision for itemization and certification was not complied with. Hence, the payments were unlawful. However, the trial court found, and we agree, that the members of the board acted in good faith. It also found that they actually incurred expenses in the performance of their official duties which equalled or exceeded the amount of the payments. But the proofs do not show any itemization, and the testimony is so general and lacking in detail that the payments cannot be justified unless the requirements of *N. J. S. A.* 40:5–1 are satisfied by the submission of the proper vouchers to the county disbursing officer.

The members of the board shall be permitted to comply with *N. J. S. A.* 40:5-1 within a time to be fixed by the trial court. If it appears upon examination of the vouchers by the approval officer and the county treasurer that the payments were not in excess of the freeholders'. proper expenses, the payments shall be deemed to be valid notwithstanding the irregularity in the making of them. If upon the examination it appears that the payments were in excess of the proper expenses, the county treasurer shall call upon the members of the board to refund the excess to the county. If the members of the board fail to submit vouchers in compliance with *N. J. S. A.* 40:5-1 within the time to be fixed by the trial court, the county treasurer shall call upon them to refund to the county all payments made pursuant to the resolutions. We believe the above procedure will correct the irregularities and provide for an equitable disposition of the matter, and is in harmony with the procedure outlined by the former Supreme Court in *State, Bradley, Pros., v. Council of Town of Hammonton, supra,* 38 *N. J. L.,* at *page* 436.

The judgment is modified and the cause is remanded to the Law Division for further proceedings consistent with this opinion.

*For modification*—Chief Justice WEINTRAUB, and Justices BURLING, JACOBS, FRANCIS, PROCTOR and SCHETTINO—6.