113 N.J. Super. 598 (1971)
274 A.2d 622
MARION COBB, ET ALS., PLAINTIFFS,
v.
CITY OF CAPE MAY, ET ALS., DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided February 8, 1971.
*599 Mr. Walter C. Wright, Jr., attorney for plaintiffs.
Mr. Nathan W. Davis, Jr., attorney for defendants.
HORN, A.J.S.C.
Plaintiffs have moved for summary judgment in this action in lieu of prerogative writs. R. 4:46-2 requires that such judgment shall be rendered if the pleadings, depositions and admissions on file, together with the affidavits, if any, show palpably that there is no genuine issue as to any material fact.
Wright, one of the plaintiffs in the instant action, had brought a libel action against Cape May City Mayor Frank A. Gauvry and others. Harry Green, Esq. was retained by the city to represent Mayor Gauvry. Pursuant to a resolution adopted by the city council, Green was paid $2500 as a retainer. In addition, litigation expenses were also paid by the City.
Wright conceived himself to have been libelled as the result of certain declarations made by Gauvry. The libel action was ultimately terminated by a summary judgment entered for all the defendants on a holding by the court which *600 included a determination that the words used were not defamatory.
The statements attributed to the mayor appeared to have been made as a representative of the city; that is to say, in his capacity as mayor and as a member of city council. The subject matter of the libel suit dealt primarily with the qualifications of the city manager of the City of Cape May.
Plaintiffs' contentions on the merits of the issue may be summed up in the questions of whether Gauvry was acting as mayor when he made the statements, whether he had the right to make statements as such and whether the city, under the circumstances, had the right to pay for his defense.
Plaintiffs rely on N.J.S.A. 40:81-8 which defines the duties of the mayor in the form of government adopted by the city as follows:
The mayor shall preside at all meetings of the municipal council and shall have a voice and vote in its proceedings, but shall not have the power of veto. He shall fill vacancies occurring in the trustees of the public library for such terms of offices as are provided by law. All bonds, notes, contracts and written obligations of the municipality shall be executed on its behalf by the mayor or, in the event of his inability to act, by such councilman as the municipal council shall designate to act as mayor during his absence or disability. The powers and duties of the mayor shall be only such as are expressly conferred upon him by this subtitle.
Plaintiffs argue that the mayor was not authorized to make statements in behalf of the city; that since he allegedly made them as an individual, the city had no legal authority to furnish him with counsel or otherwise indemnify him against loss in defending the resulting suit.
The law is well settled that a public official is entitled to compensation for expenses incurred in the performance of his official duties. As early as 1874 the Supreme Court of New Jersey held that public funds may be expended for the payment of "expenses honestly incurred by courts, public officers or private citizens in furtherance of the due administration *601 of justice." State, Lewis, prosecutor v. Freeholders of Hudson County, 37 N.J.L. 254 (Sup. Ct. 1874). This case was cited a few years later in State, Bradley, prosecutor v. Council of Hammonton, 38 N.J.L. 430 (Sup. Ct. 1876), where a councilman was sued for malicious prosecution. In that case the councilman had been authorized by the council to bring the suit on which the malicious prosecution charge was based. Therefore, the court said this was clearly a "town purpose" for which money could properly be spent.
This principle was reaffirmed more recently in O'Donnell v. Morris County Freeholder Board, 31 N.J. 434 (1960), where it was said that a public official may be reimbursed for expenses incurred in the discharge of his duties.
This is also the law in other jurisdictions. Maitland v. Town of Thompson, 129 Conn. 186, 27 A.2d 160 (Sup Ct. Err. 1942), involved a taxpayers' suit to restrain payment of a bill for attorney's services in defending a libel suit against members of the board of education. The libel suit arose out of a letter that the school board wrote to the state commissioner of education giving reasons for its action in firing the superintendent of schools. The superintendent sued and judgment was entered for defendants. The court held that a public officer was entitled to indemnification for loss sustained in the discharge of his official duties, provided:
The officer must have been acting in a matter in which the corporation has an interest, he must have been acting in the discharge of a duty imposed or authorized by law and he must have acted in good faith. [27 A.2d at 162]
The court went on to say that:
The responsibility of public officers is to their constituents and the latter are entitled to know the reasons for official acts in order to judge whether the officers in question continue to deserve public confidence and support. The interest of the town in the matter clearly appears. The fact that the act of sending the letter was not the *602 official action of the board does not necessarily determine the issue in favor of the plaintiffs. [at 162; emphasis added].
In 10 McQuillin, Municipal Corporations, § 29.14 at 268, it is stated that
* * * where an action is defended as an official duty rather than for personal motives it is proper for the municipality to authorize payment of expenses. Thus, it has been held that the corporation may employ an attorney to defend a suit against an officer growing out of a transaction in the performance of a duty, for example, an action for malicious prosecution, or for libel.
I do not believe that the right of the municipality to provide for the defense of the mayor or other official of the municipality is circumscribed by whether he acts precisely within his statutory authority. Public policy dictates that public officials, acting bona fidely within the apparent sphere of their duties and for the benefit of the municipality, should be protected by the municipality against personal loss from such actions as the one involved here. There should be no fine line drawn to distinguish when such officer is entitled to such protection. He should not be constantly apprehensive in the performance of his duties that he may be involved in litigation which might prove expensive to himself personally. Cf. N.J.S.A. 14A:3-5; 18A:12-20; 18A:16-6; 18A:60-4. Such concern would have a tendency to stifle debate and curtail appropriate action in matters of public concern.
In 64 C.J.S. Municipal Corporations § 1835b at 334-335, it is said:
There is no universal test for distinguishing between a purpose which is public or municipal and, therefore, a proper object of municipal expenditure and one which is private and, therefore, an improper object to which to devote public money. Each case must be decided in the light of existing conditions, with respect to the objects sought to be accomplished, the degree and manner in which that object affects the public welfare, and the nature and character of the thing to be done; but the court will give weight to a legislative determination of what is a municipal purpose, as well as widespread *603 opinion and general practice which regard as city purposes some things which may not be such by absolute necessity, or on a narrow interpretation of constitutional provisions. Where an appropriation of public funds is primarily for public purposes, it is not necessarily rendered violative of constitutional provisions against gifts and loans of public credit by an incidental result which may be of private benefit. On the other hand, if the result is chiefly that of private benefit, an incidental or even ostensible public purpose will not save its constitutionality. A purpose may be a public one so as to be within a municipal power to appropriate funds therefor, even though it is not a necessary purpose.
City Affairs Committee of Jersey City v. Jersey City, 134 N.J.L. 180 (E. & A. 1945), involved the action of a municipality in publicizing, through public advertisments at public expense, what the governing body conceived to be sound reasons, relating to the essential local welfare, for the rejection by the people of this State of proposed amendments to the State Constitution. In upholding such right on the part of the municipality the court said:
While a municipal corporation is a government of enumerated powers, acting by a delegated authority, it possesses also such rights as arise by necessary or fair implication, or are incident to the powers expressly conferred, and such as are essential to the declared objects and purposes of the municipality. [at 182]
In a sense, the action of the mayor, as confirmed by the action of the city council in adopting the challenged resolution, was incident to the powers not of the mayor alone, but also of the city council. It is true that the mayor, under the municipal manager form of government, is not the chief executive officer. But it is also true that he does have a voice in the city management, having a vote as a member of city council. In these capacities he has an interest in the dissemination of information to the public which bears upon and otherwise explains the action of the governing body. In this respect the mayor was acting within the scope of his duties and apparent authority.
Errington v. Mansfield Township Board of Education, 81 N.J. Super. 414 (App. Div. 1963), 42 N.J. 320 (1964) *604 and 100 N.J. Super. 130 (App. Div. 1968) is not to the contrary. In that case, the issues were somewhat similar in that they involved the questions of whether a board of education could validly appropriate school board funds for the purpose of defraying legal fees and expenses of an individual member of the board as well as other members sued in a libel action arising out of words written by the individual member. The Appellate Division (100 N.J. Super. 130) held that under the circumstances of the alleged libel, the individual member was not entitled to legal defense at the public's expense.
This case is distinguishable because here the Mayor clearly uttered the allegedly defamatory statements, and it was so charged, as the Mayor. The statements arose out of a public controversy involving action taken by City Council, of which he was a member, and nowhere did it appear, as in Errington, that his statements were made "for the purpose of defending (his) own reputation."
If the parties can agree that there are no facts or inferences which conflict with the apparent factual situation stated by me, I would enter summary judgment for defendants.
Counsel for defendants shall prepare an order denying the motion for summary judgment made by plaintiffs.