762 A.2d 682 (2000)
335 N.J. Super. 400
Anthony KRESS, John Bruno and Bruno & Ferraro, Plaintiffs-Appellants,
v.
Peter LA VILLA, individually and in his capacity as a member of the Town Council of the Town of Guttenberg, William O'Donnell, individually and in his capacity as Mayor of the Town of Guttenberg, and Town of Guttenberg, Defendants-Respondents, and
Nicholas Cicco, Defendant-Appellant,
Vincent Tabbachino, Defendant.
Superior Court of New Jersey, Appellate Division.
Argued October 16, 2000.
Decided December 4, 2000.
*683 Jeffery A. Bronster argued the cause for plaintiffs-appellants Anthony Kress, John Bruno and Bruno & Ferraro.
Marvin R. Walden, Jr., argued the cause, West New York, for defendant-appellant Nicholas Cicco, (Greenberg & Walden, attorneys; Mr. Walden, on the brief).
William F. Aranguren argued the cause, Jersey City, for respondent Peter La Villa.
Michael L. Dermody argued the cause for respondent William O'Donnell (De Leonardis & Dermody, attorneys; Mr. Dermody, of counsel and on the brief).
Barry P. Sarkisian argued the cause, Hoboken, for respondent Town of Guttenberg (Sarkisian, Florio & Kenny, attorneys; Mr. Sarkisian, of counsel and on the brief).
Before Judges PETRELLA, NEWMAN and BRAITHWAITE.
The opinion of the court was delivered by BRAITHWAITE, J.A.D.
Plaintiffs Anthony Kress, John Bruno and Bruno & Ferraro appeal from a summary judgment dismissing their joint claims seeking $785,768.85 for legal services rendered to defendants Nicholas Cicco *684 ("Cicco") and Vincent Tabbachino ("Tabbachino") in defending them against a federal indictment that charged, inter alia, mail fraud and "corrupt solicitation of political services to influence the distribution of municipal jobs in violation of 18 U.S.C.A. § 666(a)(1)(B)." U.S. v. Cicco, 10 F.3d 980, 981 (3d Cir.1993). The charges arose during Cicco's tenure as the mayor of defendant Town of Guttenberg (the "Town") and Tabbachino's tenure as a member of the Town council. Plaintiffs sought payment of the fees from the Town.
Plaintiff Bruno sought, as a partner in the firm Bruno & Ferraro, $548,871.97 for representing Cicco. Plaintiff Kress sought $236,896.88 for representing Tabbachino. Plaintiffs also sued defendant Peter La Villa ("La Villa"), individually, and in his capacity as a member of the Town council when plaintiffs' claim for fees was denied by the Town. In addition, plaintiffs sued defendant William O'Donnell ("O'Donnell"), individually, and in his capacity as mayor when plaintiffs' claim for fees was denied by the Town.
Cicco also appeals from a summary judgment dismissing his cross-claim against La Villa, O'Donnell and the Town, in which Cicco sought payment for his legal fees owed to plaintiff Bruno. Tabbachino filed for bankruptcy prior to answering plaintiffs' complaint. He obtained a discharge of his debt for legal fees and plaintiff Kress dismissed his claim as to Tabbachino.
The relevant facts giving rise to these appeals are as follows. The Town employed special police officers who augmented the manpower of the regular police force. These special officers worked approximately fifteen hours per week and received hourly wages and medical benefits from the Town. In 1988, Michael Postorino ("Postorino") and Francisco Marrero ("Marrero") were special police officers.
In November 1988, shortly after the municipal elections in the Town, Postorino and Marrero were each told that there would be no more opportunities to work as special police officers until they spoke with Cicco. At a meeting with Marrero, Cicco told him that members of the council were upset with Marrero because of his failure to actively support the Town's Democratic party. Postorino was made to understand that he was similarly subject to the same criticism.
Thereafter, Marrero and Postorino conferred with a Republican political ally who arranged for the officers to meet with the Hudson County Prosecutor. Following that meeting, Postorino and Marrero agreed to tape record conversations with Cicco and Tabbachino. The transcript of the tape recordings revealed that Postorino and Marrero were not assigned work for three reasons: municipal cutbacks, their lack of support of the Democrats in the November 1988 election, and a report that Postorino had threatened a Democratic campaign worker. Postorino and Marrero were not reappointed as special police officers in January 1989.
Thereafter, the federal government obtained a twelve-count indictment against Tabbachino and Cicco. The gravamen of the indictment was that Marrero and Postorino were not reappointed as special police officers because they refused to perform political services for Cicco and Tabbachino as a condition of their employment.
Following indictment, Cicco retained Bruno to represent him and executed a written retainer agreement. Tabbachino retained Kress. Plaintiffs, by letters dated August 7, 1989, advised the Town of their representation. Essentially, the letters stated that, at the conclusion of the federal case, Cicco and Tabbachino intended to seek reimbursement for their legal fees and costs in defending against the federal indictment. The Town did not respond to plaintiffs' letters. The Town's failure to respond was treated by plaintiffs as acceptance by the Town of the terms contained in the letters. Moreover, plaintiffs contend that on September 13, 1989, *685 the Town council held a meeting which plaintiffs attended and were given assurances and "what they reasonably believed to be an absolute commitment that the Town would pay their fees, subject to the prohibitions of law." Plaintiffs recognized that if Cicco and Tabbachino were convicted, the Town would not pay the legal fees.
The resolution of the federal indictment was the subject of two published opinions of the Third Circuit, U.S. v. Cicco, 938 F.2d 441 (3d Cir.1991) ("Cicco I") and U.S. v. Cicco, 10 F.3d 980 (3d Cir.1993) ("Cicco II"). Cicco and Tabbachino went to trial before a jury in the fall of 1989. In Cicco I, the Third Circuit held that the convictions of 18 U.S.C.A. § 666, an anti-bribery statute, did not apply but 18 U.S.C.A. § 601, another anti-bribery statute, clearly applied. Cicco I, 938 F.2d at 446. The result of this ruling was that Cicco and Tabbachino were guilty only of violations of 18 U.S.C.A. § 601. The Third Circuit remanded the matter to the district court to impose sentence.
Following the remand, Cicco and Tabbachino were sentenced. They appealed, resulting in Cicco II. On appeal, Cicco and Tabbachino asserted that the trial evidence was insufficient to support their convictions. Cicco II, supra, 10 F.3d at 981. Although the court found this question to be a "close call," id. at 985, the court ultimately ruled that "the evidence indicates that defendants' primary motivation in removing Marrero and Postorino from the [special police officers unit] ... was in retaliation for their past failure to help out in the November 1988 election campaign." Id. at 986. The court then reversed the convictions, reasoning that "[u]nder the provisions of § 601, we do not punish the desire to extract political services if in fact the attempt to extract such services in the future is not made through a threat to terminate present employment or as a condition of future employment." Ibid.
Following the holding in Cicco II, plaintiffs sought payment of their legal fees from the Town. The Town refused to pay and plaintiffs commenced this litigation to compel payment. Plaintiffs sought payment on the grounds of breach of contract, promissory estoppel and common-law indemnification. Cicco filed a cross-claim to compel payment of his fees, essentially on the same grounds as plaintiffs. Following the filing of answers and defenses by all defendants except Tabbachino, the Town moved for summary judgment. The Town contended that it had not entered into any contract with plaintiffs, and therefore had not breached any contract. Further, the Town asserted that the New Jersey Constitution prohibits it from reimbursing the legal fees for municipal officials charged criminally "with official misconduct." Thereafter, La Villa and O'Donnell also moved for summary judgment.
The plaintiffs opposed the motions, arguing that the failure of the Town to adopt a resolution and a written contract complying with the Local Public Contracts Law, N.J.S.A. 40A:11-1 to 11-50 "does not absolve [the Town] from paying the plaintiffs pursuant to the agreement entered into by the Town," and, as a matter of common law indemnification, plaintiffs were entitled to be paid by the Town. Further, plaintiffs urged that there was no constitutional bar to the payment of the fees by the Town.
After arguments on the motions were heard, the motion judge granted defendants' summary judgment, concluding there "is no common law right, there is no statutory right, and ... there was no written contract and no resolution."
Following this ruling, Cicco's claims were still outstanding. The motion judge, however, erroneously certified the summary judgments granted to the Town, La Villa and O'Donnell as final judgments pursuant to Rule 4:42-2. Plaintiffs filed an appeal with this court, which we declined to hear pending the resolution of all claims, specifically those of Cicco. Thereafter, on March 5, 1999, the motion judge granted summary judgment to the Town, *686 La Villa and O'Donnell on Cicco's cross-claim.
Plaintiffs and Cicco filed separate appeals from the entry of summary judgment. Their appeals were consolidated for purposes of disposition.
Plaintiffs contend on appeal that: (1) the motion judge erred in "holding that the contract between the Town and the plaintiffs violated the Local Public Contracts Law, N.J.S.A. 40A:11-1 to 11-50, and was therefore unenforceable," and (2) the motion judge erred "in holding that plaintiffs are not entitled to payment of their legal fees as a matter of common law."
Cicco asserts that because his actions were consistent with his duties as mayor and fell "under his scope of employment, he must be reimbursed for his legal fees and cost by the Town." He also claims that the Town must pay his fees and costs under the doctrine of promissory estoppel.

I
Plaintiffs' and Cicco's contract claims fail because there was no compliance with the Local Public Contracts Law. Because of the lack of compliance, no contract existed. At the time these issues arose, N.J.S.A. 40A:11-4[1] relevantly provided:
Every contract or agreement for the performance of any work or the furnishing or hiring of any materials or supplies, the cost or the contract price whereof is to be paid with or out of public funds ... shall be made or awarded only by the governing body of the contracting unit after public advertising for bids and bidding therefor, except as is provided otherwise in this act or specifically by any other law.
There is an exception to this general provision. If the subject matter of the contract is professional services, then "[a]ny purchase, contract or agreement... may be made, negotiated or awarded by the governing body without public advertising for bids." N.J.S.A. 40A:11-5. This exception is further conditioned however. The then existing provision required that:
[t]he governing body shall in each instance state supporting reasons for its action in the resolution awarding each contract and shall forthwith cause to be printed once, in a newspaper authorized by law to publish its legal advertisements, a brief notice stating the nature, duration, service and amount of the contract, and that the resolution and contract are on file and available for public inspection in the office of the clerk of the county or municipality.
[N.J.S.A. 40A:11-5(1)(a)(i) (emphasis added).]
Plaintiffs argue that "the Local Public Contracts Law does not apply to the agreement" made in this case. They assert that the purpose of the statute is to "secure for the public benefits of unfettered competition." Meadowbrook Carting Co., Inc. v. Borough of Island Heights, 138 N.J. 307, 313, 650 A.2d 748 (1994). From this premise, plaintiffs argue that here the public was not being directly served because the contract was for legal services rendered "in defense of Cicco and Tabbachino;" hence, there was no public bidding requirement, and therefore the statute does not apply.
We reject this position. We note that plaintiffs cite no authority to support their argument. Moreover, the statute applies to "every contract or agreement ... the cost or the contract price whereof is to be paid with or out of public funds." N.J.S.A. 40A:11-4. Without question, plaintiffs were seeking to have their fees paid from public funds. The statute therefore applies.
We acknowledge that public bidding would not be necessary for the Town to enter into an agreement for legal services because such agreements fall under the *687 exception for professional services. The professional services exception, however, mandates that certain requirements be met. The governing body must adopt a resolution awarding the contract and publish a notice in a newspaper stating the nature, duration, service, and amount of the contract and advise that the contract and resolution are on file in the municipal clerk's office and available for public inspection. N.J.S.A. 40A:11-5(1)(a)(i).
Here, none of the requirements was met in order for the Town to enter into a professional services contract These requirements are necessary to advise the public of the reasons for entering into the contract, the nature, duration, service, and amount of the contract. Without satisfying these requirements, all of which are mandatory, the Town did not and could not enter into a contract with plaintiffs to pay the legal fees of Cicco and Tabbachino.
"It is axiomatic that municipal bodies in this State have no powers other than those granted by the Legislature, and must perform their prescribed activities within the statutory ambit." Sinclair Refining Co. v. County of Bergen, 103 N.J.Super. 426, 433, 247 A.2d 484 (App. Div.1968), certif. denied, 53 N.J. 272, 250 A.2d 136 (1969). "[T]here is no inherent right of local self-government. Municipalities are but creatures of the State, limited in their powers and capable of exercising only those powers of government granted to them by the Legislature." Sussex Woodlands, Inc. v. Mayor and Council of West Milford, 109 N.J.Super. 432, 434-35, 263 A.2d 502 (Law Div.1970) (citation and internal quotation marks omitted).
Because this appeal arises from a motion for summary judgment, we accept as true, for purposes of this opinion, that plaintiffs attended a meeting of the Town council in September 1989, where the council gave assurances to plaintiffs that their fees would be paid if they successfully defended Cicco and Tabbachino. See Strawn v. Canuso, 140 N.J. 43, 48, 657 A.2d 420 (1995). The acceptance of this point as true does not change the result that the Town, La Villa and O'Donnell were properly granted summary judgment on plaintiffs' and Cicco's contract claims.
"It is too well established to cite authority for the proposition that while a public body may make contracts as an individual, it can only do so within its express or implied powers and those who deal with a municipality are charged with notice of limitations imposed by law upon the exercise of that power." Midtown Properties, Inc. v. Township of Madison, 68 N.J.Super. 197, 208, 172 A.2d 40 (Law Div.1961). Additionally, "[a] public body may only act by resolution or ordinance...." Ibid.
Here, plaintiffs, lawyers all, are charged with notice that the Town could not enter into an enforceable contract to pay their legal fees without compliance with the statutory mandate. "Any exercise of a delegated power by a municipality in a manner not within the purview of the governing statute is capricious and ultra vires of the delegated powers." Giannone v. Carlin, 20 N.J. 511, 517, 120 A.2d 449 (1956). "A municipality in exercising the power delegated to it must act within such delegated power and cannot go beyond it. Where the statute sets forth the procedure to be followed, no governing body, or subdivision thereof, has the power to adopt any other method of procedure." Midtown Properties, Inc., supra, 68 N.J.Super. at 207, 172 A.2d 40. The Town could not contract with plaintiffs to pay their fees without compliance with the Local Public Contract Law.
Further, plaintiffs' reliance on Wanaque Borough Sewerage Auth. v. Township of West Milford, 144 N.J. 564, 677 A.2d 747 (1996), is misplaced. There, public entities agreed to investigate the feasibility of a joint sewerage and water treatment facility. However, the necessary formalities regarding public expenditures were not entered into. When one of the municipalities *688 decided not to go through with the plan, it was sued to recover the costs incurred at the planning and investigation stage. Id. at 568-70, 677 A.2d 747.
Our Supreme Court held that, although there was no contract due to the failure to follow statutory provisions regarding public obligations, the doctrine of quasi-contract precluded one party from being unjustly enriched at the expense of another. The court noted that the fact that "the project did not turn out ultimately to serve the needs of the residents of [the "breaching" municipality] does not detract from the fact that they received a benefit from the planning studies." Id. at 576, 677 A.2d 747. Here, there is no basis to conclude that the Town was unjustly enriched at the expenses of plaintiffs or their clients so as to invoke the doctrine of quasi-contract.

II
Cicco contends that because he acted pursuant to his official duties as mayor, the Town should pay his fees. We reject this contention. In his appeal of his federal convictions, Cicco asserted "that there is ample evidence to suggest that Postorino and Marrero were denied employment because they failed to support the Democratic candidates in the November 1988 election." Cicco II, supra, 10 F.3d at 983. Cicco also argued that this evidence constituted no more than proof "of retaliation and that retaliation is not punishable under the language" of the federal statute he was convicted of violating. Ibid.
The Third Circuit adopted Cicco's position in concluding that there was insufficient evidence for a rational jury to conclude that Cicco attempted to violate the statute. See id. at 986-87. But clearly, terminating Postorino and Marrero for their failure to support Democratic candidates was not an official duty of the mayor. To the contrary, it was pure partisan politics.
Therefore, we are satisfied that the doctrine of judicial estoppel prevents Cicco from asserting here that his actions in terminating Postorino and Marrero were part of his official duties as mayor. "The purpose of the judicial estoppel doctrine is to protect `the integrity of the judicial process.'" Kimball International, Inc. v. Northfield Metal Products, 334 N.J.Super. 596, 760 A.2d 794 (App.Div. 2000) (quoting Cummings v. Bahr, 295 N.J.Super. 374, 387, 685 A.2d 60 (App.Div. 1996)). When a party successfully asserts a position in a prior legal proceeding, that party cannot assert a contrary position in subsequent litigation arising out of the same events. Kimball International, Inc., supra, 334 N.J.Super. at 606-07, 760 A.2d 794. "`The principle is that if you prevail in suit number one by representing that A is true, you are stuck with A in all later litigation growing out of the same events.'" Id. at 607, 760 A.2d 794 (citation omitted). Although judicial estoppel is most often applied in the civil context, Cf. United States v. McCaskey, 9 F.3d 368, 378 (5th Cir.1993), cert. denied, 511 U.S. 1042, 114 S.Ct. 1565, 128 L.Ed.2d 211 (1994), we are satisfied that the doctrine operates with equal force where, as here, a litigant seeks to alter a position asserted in a prior criminal proceeding that was adopted by the criminal court. State v. Gonzalez, 142 N.J. 618, 632, 667 A.2d 684 (1995) (holding that judicial estoppel precluded defendant from changing testimony at a license revocation hearing from that given in a criminal proceeding where defendant pleaded guilty). Cicco is precluded from asserting here that his actions in terminating the two special police officers arose out of his official duties as mayor.

III
Cicco also claims that he is entitled to have his legal fees paid under the doctrine of promissory estoppel. The doctrine of promissory estoppel applies only when:
the plaintiff satisfies its burden of demonstrating the existence of, or for purposes of summary judgment, a dispute *689 as to a material fact with regard to, four separate elements which include: (1) a clear and definite promise by the promisor; (2) the promise must be made with the expectation that the promisee will rely thereon; (3) the promisee must in fact reasonably rely on the promise, and (4) detriment of a definite and substantial nature must be incurred in reliance on the promise.
[Pop's Cones, Inc. v. Resorts Int'l Hotel, Inc., 307 N.J.Super. 461, 469, 704 A.2d 1321 (App.Div.1998) (citations and alterations omitted.) ]
Here, even assuming that there was a clear and definite promise by the Town, it is clear that Cicco, Tabbachino and their respective attorneys, could not have "reasonably relied" on such a promise. As we noted earlier in this opinion, there are numerous detailed requirements relating to the ability of municipalities to enter into contracts for professional services. These procedures were not followed, and "while a public body may make contracts as an individual, it can only do so within its express or implied powers; and that those who deal with a municipality are charged with notice of limitations imposed by law upon the exercise of that power." Midtown Properties, Inc., supra, 68 N.J.Super. at 208, 172 A.2d 40. Therefore, being charged with such knowledge, there could have been no reasonable reliance by plaintiffs or Cicco.
Moreover, Cicco, as the mayor, was fully aware of the requirements for the Town to enter into professional service contracts to pay legal fees. The Town adopted resolutions and entered into contracts with plaintiffs and other lawyers to defend the Town and its officials from civil claims brought by Postorino and Marrero arising out of their terminations from the position of special police officer. Plaintiffs, as lawyers, are fully charged with knowledge of the limitations imposed on the Town to enter into professional service contracts. As noted, plaintiffs received contracts to represent parties in the related civil proceedings.

IV
Finally, plaintiffs and Cicco contend that the Town is obligated to pay the fees because of common law indemnification. We disagree. Although a municipality may indemnify a public official for expenses, including legal fees, incurred in the performance of his duties, it is not obligated to do so in the absence of specific legislation. There is "`a moral obligation' of the sovereign `to pay expenses honestly incurred' `in good faith' by public officers in furtherance of governmental purposes." Palmentieri v. Atlantic City, 231 N.J.Super. 422, 429, 555 A.2d 752 (Law Div.1988). A moral obligation is a discretionary one and not a mandatory obligation.[2]
Although the application of common law indemnification to legal fees is discretionary, it is only authorized when the fees are incurred in "defending lawsuits brought against public officials who are executing the powers and duties of their office or carrying out a governmental obligation." Palmentieri, supra, 231 N.J.Super. at 429, 555 A.2d 752. Essentially, "[t]he officer must have been acting in a matter in which the [municipal] corporation has an interest, he must have been acting in the discharge of a duty imposed or authorized by law and he must have acted in good faith." Cobb v. City of Cape May, 113 N.J.Super. 598, 601, 274 A.2d 622 (Law Div.1971) (quoting Maitland v. Town of Thompson, 129 Conn. 186, 27 A.2d 160, 162 (1942)). Further, "[w]hether the authority to indemnify originates under *690 the common law, the Tort Claims Act, or a specific statute ... the analysis initially focuses on what acts can be characterized as being `within the scope of employment.'" Palmentieri, supra, 231 N.J.Super. at 431, 555 A.2d 752.
Here, the Third Circuit found that "the evidence indicates that defendants' primary motivation in removing Marrero and Postorino from the [special police officers]... was in retaliation for their past failure to help out in the November 1988 election campaign." Cicco II, supra, 10 F.3d at 986. As noted, Cicco and Tabbachino themselves argued on appeal before the Third Circuit "that there [wa]s ample evidence to suggest that [the two special officers] were denied employment because they failed to support Democratic candidates in the November 1988 election." Id. at 983. Given the finding by the Third Circuit, which adopted Cicco's position on appeal, the inescapable conclusion is that Cicco was not engaged in the good faith execution of his duties imposed or authorized by law. There is no basis to compel the Town to pay the sought after legal fees under these circumstances.
Affirmed.
NOTES
[1] The statute was amended by L.1999 c. 440 §8.
[2] In some instances, the Legislature has made the moral obligation to pay legal fees a mandatory one by the enactment of statutes. Examples of this are: statutory provisions authorizing legal fees to members of boards of education for any act or omission arising out of and in the course of the performance of their duties as board members, N.J.S.A. 18A:12-20, and legal fees for police officers in similar circumstances. N.J.S.A. 40A:14-155. There is no statutory authorization for the circumstances here.