NATHAN BARNERT v. THE MAYOR AND ALDERMEN OF THE CITY OF PATERSON.

1. Where the mayor of a city successfully resisted a proceeding taken in the name of the city against him to compel him to a course of official action which he deemed violative of law and detrimental to the interests of the city, and the performance of that duty involved the disbursement of money out of pocket, he must be reimbursed, and the proper and only fund out of which it may be done is that of the city in whose behalf, as its officer, and for whose benefit, he acted.

2. When the charter of a municipal corporation or a general law of the state does not provide to the contrary, a majority of the board of aldermen constitute a quorum, and the vote of a majority of those

present, there being a quorum, is all that is requisite for the adoption or passage of a motion or the doing of any other act the board has power to do.

Case certified from the Passaic Circuit Court. The facts are stated fully in the opinion of the court.

Argued at February Term, 1886, before BEASLEY, CHIEF JUSTICE, and Justices KNAPP and MAGIE.

For the plaintiff, *Geo. S. Hilton.*

For the defendant, *John W. Griggs.*

The opinion of the court was delivered by

KNAPP, J. This case, upon an agreed state of facts, is certified to this court for its advisory opinion.

The plaintiff's claim is for money expended by him, when mayor of the city of Paterson, to defray his reasonable costs and expenses in defending himself as such mayor in a proceeding taken by or in behalf of the city to obtain mandatory process compelling the plaintiff, as such mayor, to join in the execution of certain bonds which the city was about to issue. The plaintiff here was successful in his defence to that proceeding. This court justified the refusal of the mayor to act as therein required, on the ground that such refusal properly resisted the consummation of a corporate enterprise illegally begun by other constituted authorities.

The first question here is whether necessary reasonable expenditures, in such a discharge of public official duty, laid the ground for legal claim against the city. The right of the corporation to indemnify an officer for losses and expenses incurred in the discharge of an official duty in a matter in which the corporation is interested, is supported by repeated adjudications. *State, Lewis* v. *Freeholders of Hudson,* 8 *Vroom* 254; *State, Bradley* v. *Hammonton,* 9 *Vroom* 334. But such indemnity may be granted to one not possessed of a right at

law to enforce his claim. It does not, therefore, suffice for this claim that the city might lawfully repay him. The plaintiff's claim cannot be rested solely upon the ground that he was successful in a suit in which he and the defendant were opposing litigants, for all his rights as such litigant against his opponent would be determined and adjusted in the resulting judgment. *Hall* v. *Leaming*, 2 *Vroom* 321.

His costs of suit would be the measure of his redress. His claim, if recoverable at all, must be based on relations with the defendant other than those of an opposing litigant. The expenditure which he seeks to be repaid must have been made under some authority lawfully conferred upon him by the city, or subsequently recognized, or in virtue of some provision of the charter or general rule of law. The city authorities had not authorized the employment of counsel. No provision in the charter expressed power in the mayor to employ counsel at the city's expense, and on this branch of the case appeal must be made to the general law.

The implied liability of corporations of this nature is generally restricted to cases where the city obtains money or property of others by mistake, or without authority of law, and appropriates such money or property under such circumstances that the general law imposes the obligation to pay in order to do justice. For services rendered voluntarily or under an unauthorized contract, or for money voluntarily paid for its use, no liability arises. The law will not raise the volunteer to the position of a creditor. But this case is peculiar, and, I think, exceptional. The mayor, as head officer of the city, occupied a position of public trust. It was his duty, under the charter, " to be vigilant and active in causing the ordinances of the city and the laws of the state to be executed and enforced, and, as far as possible, to promote efficient government in the city." The proceeding taken in the name of the city against him, which gave rise to the expenditure sued for, was to compel him to a course of official action which he deemed violative of law and detrimental to the interests of the city. To make proper defence, service of

counsel was necessary.   If he was right in his judgment, the city should have furnished him the aid of proper counsel. But the official law officer was in court against him, and the city authorities to whom, ordinarily, he should have applied, were the real actors in the proceeding against him.   It would, under these circumstances, have been idle to make the application.   Ordinarily, his duty would have ended with an unsuccessful application to the official counsel, or if the city counsel were not available, then by application to the appropriate authority to furnish other counsel ; but he could expect aid from neither source in the existing situation.   He was chargeable with the knowledge of his official duty, and was called upon then to decide what was the course of action which that duty demanded of him.   The risk of decision was upon him. If he erred in judgment as to his legal duty in resisting the proceeding, he must, on demanding to be reimbursed his outlay, have stood as a mere volunteer and borne the direct consequences of defeat.   The judgment of the court which the parties invoked vindicated his decision and found him acting in obedience to the commands of the charter.

I do not think the mayor's duty would have been discharged by silent submission to the action of the court on the rule to show cause why the *mandamus* should not issue against him.   But had he remained silent then, when the alternate writ came he would have been required to make return to it, and the same services of counsel would have then been indispensable.   The city is at no loss because he met the matter at the threshold.

The claim to be indemnified for his expenditures, the entire benefit of which the city received, seems to me to be eminently just and presents a strong case for relief in some mode.   I think in its behalf the general principle of law may be invoked, that where an officer is required by law to perform a duty involving the disbursement of money out of pocket he must be reimbursd.   The proper and only fund out of which it may be done in the plaintiff's case is that of the city in whose behalf, as its officer, and for whose benefit he

acted. The rules which circumscribe and limit the implied liability of municipal corporations are designed in the law as shields against the imposition of false claims, and to guard against extravagance in administration. It would be a strange perversion of their purpose to convert them into means to deter faithful public officers from honest effort to guard and protect public trusts confided to their care. But if this ground of recovery be regarded as untenable or doubtful, I think the action of the city authorities has been such as to raise this into an express promise to pay, and that upon valuable consideration. The bill, on being presented to the board of aldermen, was, by proper resolution, referred to the committee on finance, and by that board reported for payment. This department of finance is not " a mere subdivision of the council" but is a statutory organization with independent powers conferred by the charter. Their power is to settle and adjust all claims in favor of or against the corporation. *State, Hoxsey, pros.*, v. *Paterson*, 10 *Vroom* 489, 494.

The charter provides that the comptroller shall, when so ordered by the board of aldermen, draw warrants on the city treasurer for the payment of claims. *Pamph. L.* 1871, *p.* 836, § 67. The claim having been settled and adjusted by the department of the city government authorized to perform that duty, the order of the board of aldermen upon the comptroller was the remaining requisite for the issuing of a warrant on the treasurer for payment. On the presentation of the report to the board of aldermen, at a regular meeting at which fifteen members were present, on a motion that the report be received and adopted, and the comptroller draw his warrant on the treasurer for payment, eight of the members so present voted in the affirmative. The whole membership of the board consisted of sixteen. The charter provides that a majority of the whole number of members shall constitute a quorum for the transaction of business (section 22). It is denied that this passed the order of payment, on the ground that the board of aldermen had adopted amongst its rules one which provides that no resolution, by-law or ordinance shall be passed without a con-

curring vote of at least nine members, and if they involve the expenditure of money, they shall require the votes of two-thirds of the whole members of the board. There are various provisions in the charter declaring the number of votes required in specified cases, but there is no part of the charter which provides for the number requisite to order payment of a claim passed upon by the finance committee. The true rule in such a case I think is correctly stated in the brief of the counsel of plaintiff. When the charter of a municipal corporation or a general law of the state does not provide to the contrary, a majority of the board of aldermen constitute a quorum, and the vote of a majority of those present, there being a quorum, is all that is required for the adoption or passage of a motion or the doing of any other act the board has power to do. 1 *Dill. Mun. Corp.*, §§ 278, 283 ; *Walls* v. *Rahway River Co.*, 4 *C. E. Green* 402.

Under the twenty-third section of the charter, the board is given power " to establish its own rules of procedure." But I do not think that under this power it was designed to confer upon this board the adoption of a rule changing either the general law or any special provision in the charter. Power to make such rules and by-laws was inherent in the corporation without this provision. Such by-laws must be in accordance with the charter or the general rules of law. The charter is silent and the general law requires a majority vote. *Taylor* v. *Griswold*, 2 *Green* 222.

Official action which affects the rights of third persons, or the public, must be taken and manifested in the mode pointed out by law.

I think it of no moment that the board of aldermen determined, under their rule, that the resolution and order to pay failed in its passage. The court will look at what they did and determine the legal result of their action.

The Circuit should be advised that the plaintiff is entitled to recover his claim.