**Jim MANSFIELD and State ex rel. Mansfield, Appellants–Petitioners/Relators,**

v.

**Sharon McSHURLEY and Delaware County, Indiana Election Board, Appellees–Respondents.**

No. 18A02–0804–CV–375.

Court of Appeals of Indiana.

May 28, 2009.

William R. Groth, Geoffrey S. Lohman, Fillenwarth Dennerline Groth & Towe, LLP, Indianapolis, IN, Joseph P. Hunter, Michael P. Quirk, Quirk, Rivers & Hunter, Muncie, IN, Attorneys for Appellants.

David M. Brooks, Brooks Koch & Sorg, Indianapolis, IN, Frank E. Gilkison, Muncie, IN, Attorneys for Appellees.

## OPINION

MAY, Judge.

Jim Mansfield was initially declared the winner of the election for mayor of Mun-

cie, but after a recount Sharon McShurley was declared the winner. Mansfield challenged that result, but his case was dismissed because he did not bring his action within fourteen days of the election as required by Indiana statute. Mansfield next filed a complaint in *quo warranto* to challenge the exclusion of some ballots by election officials.[1] That action was dismissed after the trial court found Mansfield's allegation of a "mistake" in the counting of improperly-initialed ballots did not amount to an allegation of an unlawful act that could be redressed by a *quo warranto* action. Mansfield also alleged fraud, but the trial court found his allegations were insufficiently specific.

We affirm the trial court.[2]

## FACTS AND PROCEDURAL HISTORY

Mansfield, the Democrat candidate for mayor of Muncie, appeared to defeat McShurley, the Republican, in the November 6, 2007 election. Mansfield was issued a certificate of election on November 23, but on November 26, the Delaware County Republican Party petitioned for a recount. Accordingly, all the ballots, machines, and other materials were impounded. During the recount it was determined that nineteen absentee ballots had been distributed to voters without the initials of a Republican member of the election board, so those ballots were disqualified. Eighteen of those ballots were for Mansfield and one

was for McShurley. When the recount was finished December 20, McShurley was declared the winner by thirteen votes.

A week later Mansfield brought a petition for election contest, alleging the above-described "mistake was made in the distribution of ballots," (App. at 19), which mistake made it impossible to determine the winner. McShurley moved to dismiss the contest and the trial court did so on the ground it had no jurisdiction to hear the contest because it was not timely filed.

On February 13, Mansfield filed an amended complaint in *quo warranto*. There he alleged the irregularity with the nineteen ballots mentioned above was that they "were either distributed by mistake or were knowingly or intentionally and fraudulently distributed without proper initials," (*id.* at 47), and not counted, causing McShurley to win even though Mansfield had more votes. McShurley moved to dismiss this complaint on the ground Mansfield did not have a basis for a *quo warranto* claim. The trial court dismissed before Mansfield responded.

## DISCUSSION AND DECISION

A motion to dismiss for failure to state a claim tests the legal sufficiency of the claim, not the facts supporting it, so our review of a grant or denial of a motion based on Trial Rule 12(B)(6) is *de novo*. *Charter One Mortg. Corp. v. Condra*, 865 N.E.2d 602, 604 (Ind.2007). When reviewing a motion to dismiss, we view the plead-

1. The common-law remedy of *quo warranto* is employed either to determine the right of an individual to hold public office or to challenge a public officer's attempt to exercise some right or privilege derived from the state. In its broadest sense, *quo warranto* is a writ of inquiry as to the warrant for doing the acts about which complaint is made. It is the remedy or proceeding by which the state determines the legality of a claim a party asserts to the use or exercise of an office or franchise and ousts the holder if the claim is not well

founded. *Quo warranto* is intended to prevent the exercise of powers that are not conferred by law. 65 Am.Jur.2d *Quo Warranto* § 1 (2001).

2. We held oral argument at Purdue University on April 14, 2009. We thank the University and the Purdue Student Government for its hospitality and commend counsel for the quality of their oral advocacy.

ings in the light most favorable to the nonmoving party, with every reasonable inference construed in the nonmovant's favor. *Id.* A complaint may not be dismissed for failure to state a claim on which relief can be granted unless it is clear on the face of the complaint that the complaining party is not entitled to relief. *Id.* at 605.

### 1. *Dismissal of Election Contest*

A candidate who contests an election "must file a verified petition with the circuit court clerk of the county that contains the greatest percentage of the population of the election district *no later than noon fourteen (14) days after election day.*" Ind.Code § 3–12–8–5 (emphasis supplied). Neither candidate requested a recount within fourteen days. Twenty days after the November 6th election, the Delaware County Republican party petitioned for a recount. The recount was concluded December 20, and McShurley was certified the winner. Mansfield brought his Petition for Election Contest seven days later.

McShurley's motion to dismiss asserted four grounds for dismissal with prejudice: (1) Mansfield's petition was not brought within the fourteen-day statutory period; (2) exclusive jurisdiction over the election result was in Delaware Circuit Court No. 3, such that Circuit Court No. 5, where

Mansfield brought his position, lacked jurisdiction to hear it; (3) Mansfield did not state a claim because he did not allege a "mistake in the distribution of ballots as required and contemplated by IC 3–12–8–6," [3] (App. at 27); and (4) Mansfield did not allege any situation in which it was impossible to determine who received the highest number of votes as required by Ind.Code § 3–12–8–6.

The trial court decided it had jurisdiction but found: "The requirements imposed by [the election contest statute], including the time for filing, are jurisdictional." (App. at 16.) Therefore it dismissed Mansfield's claim without addressing whether Mansfield alleged a "mistake in the distribution of ballots" or a situation in which it was impossible to determine who received the highest number of votes. The court noted Mansfield was not precluded by the fourteen-day limit from pursuing a remedy, as "it has been held that the concurrent remedy by information and quo warranto ... does provide an adequate and complete review of the proceedings of a recount commission." (*Id.*)

Mansfield notes he was the presumptive winner of the election when the statutory time expired, so he could not have challenged the election before the statutory time expired.[4] Nor could he have known

---

**3.** Ind.Code § 3–12–8–6 provides: "A petition filed under section 5 of this chapter must state ... [a] mistake was made in the printing or distribution of ballots used in the election that makes it impossible to determine which candidate received the highest number of votes cast in the election."

**4.** The contest statute formerly provided a candidate who was first certified by the county board of canvassers as the winner of an election could file a contest petition within ten days *after the recount* showed another candidate received the highest number of votes. *State ex rel. Locks v. Peak,* 238 Ind. 468, 471,

151 N.E.2d 809, 810 (1958) (citing Section 29–5504(b) Burns' 1949 Repl. (Supp.)).

McShurley asserts Mansfield knew or should have known "the election results were in question" from the moment the recount petition was filed (Appellee/Cross-Appellants' Br. (hereinafter "McShurley Br.") at 17–18), suggesting it is "disingenuous and internally inconsistent" for Mansfield to argue it would have been "somehow unreasonable and illegal" for him to file a timely "defensive" contest petition while he was still considered the winner. (*Id.* at 18.) But Mansfield notes the Republican Party chair did not even ask for a recount until after the deadline for the contest

by that time that the nineteen absentee ballots had been distributed to voters without the initials of a Republican member of the election board. He argues the statutory deadline is not to be applied to election contestors like him who are "diligent and faultless," (Appellant's Br. at 12), in seeking relief.

■ The procedure for an election contest and for a recount of votes is purely statutory, and one seeking relief under the statute must bring himself strictly within its terms. *Slinkard v. Hunter,* 209 Ind. 475, 478, 199 N.E. 560, 562 (1936). The public has an interest in the speedy determination of controversies affecting elections, and provisions of the statute limiting the time within which steps may be taken are universally regarded as mandatory. Unless they are strictly complied with, the court is without jurisdiction of the subject matter. *Id. And see Briles v. Wurtsbaugh,* 530 N.E.2d 1187, 1188 (Ind.Ct.App. 1988) (The common law made no provision for contesting elections; the statute permitting such contests provides a special statutory proceeding. Thus, the requirements imposed by the statute are jurisdictional.).

Mansfield asserts our Supreme Court has recognized exceptions. In *State ex rel. Arredondo v. Lake Circuit Court,* 271 Ind. 176, 391 N.E.2d 597 (1979), for example, the trial court set a hearing on an election contest petition for a date within, but near the end of, the twenty-day period allowed for by statute. A timely hearing could not be held because the contestor's motion for change of judge was granted and the new judge did not qualify in time to conduct a hearing within the statutory period. The contestee filed an original action to prevent further proceedings. The Supreme Court denied the writ, stating a mandatory application of the statutory deadline would be .

> grossly inequitable and place a great burden upon both an election contestor and the trial court. A hearing might initially be set near the end of the statutory time limit. If, then, the trial court either deliberately re-schedules the hearing beyond the limit or is forced to do so because of extraordinary circumstances beyond its control, a diligent and faultless contestor would forever be denied his statutory remedy. Our laws must provide a degree of flexibility to account for such situations. There can be no justification for closing the judicial doors to a bona fide litigant when the circumstances causing the delay are completely beyond his control. We therefore hold that when there are extraordinary or unusual circumstances which preclude a contest hearing from being conducted within 20 days after the report of the recount commission, the trial court will not automatically be divested of jurisdiction so long as the hearing is had as soon as practicable after the time limit. The contestor, of course, must be diligent in his efforts and must not utilize tactics to delay the hearing beyond the 20–day period.

*Id.* at 178–79, 391 N.E.2d at 599. The Court noted the broad purpose of the recount statute and the contest statute is a "full and fair litigation of election disputes in an expeditious manner. This legislative intent is not defeated by construing the statute to permit unusual circumstances to extend the time period within which a

petition had passed. We decline to find "disingenuous" a failure by the apparent winner of an election to challenge it and believe McShurley's characterizations of Mansfield's

positions are unfair. We further observe tempered and patient advocacy is always the most persuasive.

hearing must be had." *Id.* at 179, 391 N.E.2d at 599.

In *Arredondo,* the petitioner moved for and was granted a change of judge ten days before the expiration of the time period. The motion "did not come so late as to prevent a timely hearing" and the petitioner "was diligent in requesting that the hearing be scheduled" within the statutory period. *Id.,* 391 N.E.2d at 600. Therefore the failure of the trial court to conduct the hearing within 20 days of the report of the recount commission was not a jurisdictional defect and the petition for a permanent writ of mandate and prohibition was denied. *Id.*

In *Pabey v. Pastrick,* 816 N.E.2d 1138, 1143 (Ind.2004), *reh'g denied,* our Supreme Court relied on *Arredondo* in rejecting Pastrick's claim the trial court should have dismissed Pabey's election contest complaint as untimely. Pastrick argued the trial court lost jurisdiction because the statutory deadline for its hearing had passed. The trial court noted delays in securing a judge to hear the case and pointed out that the special judge who ultimately tried the case was not appointed until just a few days before the deadline for a hearing. The trial court decided the election contest was heard as soon as practicable, and in light of the circumstances "and the lack of any compelling indication Pabey was less than diligent in moving the case forward," 816 N.E.2d at 1144, the case came under the *Arredondo* exception to the twenty-day deadline. Our Supreme Court agreed. *Id.*

*Pabey* and *Arredondo* do not establish exceptions to the fourteen-day jurisdictional requirement in the election contest statute, as both dealt with the question whether a trial court's failure to *hold a hearing* within the time prescribed by statute divested it of jurisdiction it had already acquired.

We acknowledge the unusual result the application of the statutory time limit permits, whereby a candidate who could not have known until after the time limit has passed that he might have lost the election has lost his right to contest the election under the statute. But the availability of *quo warranto* gives a challenger a "day in court" even if a recount changes the result:

> The remedy by information in the nature of quo warranto does provide for an adequate and complete review of the proceedings of the recount commission. In quo warranto, as well as the Code remedy for an election contest, the contested ballots are examined by the trial court, and on appeal the original ballots and documents should be made a part of the bill of exceptions. With such a record before this court, we are in a position to and do examine the ballots and other documents and weigh this evidence to determine which party received the highest number of votes and therefore has title to the office.

*State ex rel. McCormick v. Superior Court of Knox County,* 229 Ind. 118, 124–25, 95 N.E.2d 829, 832 (1951).

An action for *quo warranto* does not lie "until the one holding the latest certificate of election or commission takes possession of the office and assumes the duties" thereof. *Id.* at 124, 95 N.E.2d at 831–32. "This may cause some delay, since it does not permit the institution of an action for such adjudication of title before the official terms of the office begins, while the statutory contest under the code must be filed within fifteen days after the election." *Id.,* 95 N.E.2d at 832. This suggests a statutory contest action may not be brought outside the statutorily prescribed time frames even if, as in the case

before us, the election result changes by virtue of a recount.

Because the statutory time limit is jurisdictional and Mansfield still had available to him an action for *quo warranto,* we cannot say the trial court erred in dismissing his election contest petition.

## 2. *Dismissal of Quo Warranto*

After his Petition for Election Contest was dismissed, Mansfield amended the complaint to add a complaint in *quo warranto.* McShurley moved to dismiss it on the grounds Mansfield did not file that action soon enough either [5] and Mansfield's allegations in the complaint were insufficient. The trial court did not address the allegation Mansfield's petition was untimely, but dismissed because (1) the recount commission did nothing unlawful when it declined to count certain ballots, and (2) Mansfield's complaint did not allege fraud or mistake specifically enough.

In his complaint Mansfield alleged that during the recount it was discovered that nineteen absentee ballots in one precinct had been distributed to voters without the initials of a Republican member of the election board or a designated representative. The ballots were "either distributed by mistake or were knowingly or intentionally and fraudulently distributed without proper initials." (App. at 47.) The exclusion of these ballots, Mansfield alleged, caused McShurley to be declared the win-

ner even though Mansfield received more votes.[6]

In dismissing, the trial court acknowledged an election is ultimately decided "by the ballots, and the eligible candidate who received the highest number is entitled to the office," (*id.* at 12), but went on to hold the word "votes" means "legitimate" votes.[7] (*Id.* at 13.) The improperly-initialed absentee ballots at issue here could not be included in the recount, it held, so the recount commission did nothing "unlawful" when it declined to count them. (*Id.*)

■ An absentee ballot may not be counted unless the ballot is endorsed with the initials of the two members of the absentee voter board in the office of the circuit court clerk or the two appointed members of the county election board or their designated representatives. Ind. Code § 3–12–1–13. Mansfield concedes those ballots could not be counted in the recount, but alleged in the *quo warranto* complaint that the error by the election officials in the initialing and distribution of the ballots, which error happened "through no fault of the voters in precinct 46," (App. at 47), "depriv[ed] the majority of the voters of their chosen candidate." (Appellant's Br. at 19.) "Ignorance, inadvertence, mistake, or even intentional wrong, on the part of local officials, should not be permitted to disfranchise a district." *Parvin v. Wimberg,* 130 Ind. 561, 30 N.E. 790,

---

**5.** Ind.Code § 3–12–6–22.5 provides a challenge to the certification of an election result must be brought within thirty days of a court order acknowledging the certificate. That happened December 20, 2007, and Mansfield brought his *quo warranto* complaint February 13, 2008.

**6.** McShurley does not appear to argue she initially received more votes than did Mansfield. Rather, she argues the recount com-

mission properly excluded the nineteen questioned ballots.

**7.** It relied on this statement in the *Pabey* dissent: "[I]f *quo warranto* had been attempted, it would require essentially the same showing that the statute demands for an election contest: proof that Pabey received the greater number of legitimate votes." 816 N.E.2d at 1156 (Boehm, J. dissenting).

792 (1892) (quoting *Gilleland v. Schuyler*, 9 Kan. 569 (1872)).

Mansfield characterizes the improperly-initialed ballots as representing "legal" votes because they were not "fraudulent" like those addressed in *Pabey;* rather, they were legitimate ballots made invalid by the election officials' mistake. The *Pabey* court noted that distinction and acknowledged four statutory grounds for an election contest that refer to situations where it is "impossible to determine the candidate who received the highest number of votes":

> (2) A mistake occurred in the printing or distribution of ballots used in the election that makes it impossible to determine which candidate received the highest number of votes.
>
> (3) A mistake occurred in the programming of an electronic voting system, making it impossible to determine the candidate who received the highest number of votes.
>
> (4) An electronic voting system malfunctioned, making it impossible to determine the candidate who received the highest number of votes.
>
> (5) A deliberate act or series of actions occurred making it impossible to determine the candidate who received the highest number of votes cast in the election.

*Pabey,* 816 N.E.2d at 1147–48 (quoting Ind.Code § 3–12–8–2).

The last of these grounds, the "deliberate actions" ground, "is in stark contrast to the first three, which encompass inadvertent human error or device malfunction." *Id.* at 1149. The Court found the distinction significant. The occurrence and resulting consequences of the "mistake" or "malfunction" referred to in the first three grounds are likely to be ascertainable with relative objectivity. *Id.* at 1150. But "the disruptive effects of deliberate conduct committed with the express purpose of obscuring the election outcome based on legal votes cast is likely to be more invidious and its results difficult to ascertain and quantify." *Id.* The legislature could not have intended to immunize obviously corrupt elections where the resulting distortion of an election outcome could not be precisely traced and mathematically determined. *Id.*

■ Therefore, the Court held, the results of an election contested under the deliberate actions ground may not be set aside and a special election ordered unless the deliberate acts or series of actions succeed in substantially undermining the reliability of the election and the trustworthiness of its outcome. *Id.* A challenger seeking a special election under the deliberate actions ground must conclusively show actions by one or more persons who knew or reasonably should have known the conduct would make it impossible to determine which candidate received the most legal votes cast in the election, and the deliberate actions undermined the integrity of the election and the trustworthiness of its outcome. *Id.*

This, Mansfield argues, means a special election is an appropriate remedy. He is not asking to have any fraudulent votes counted, but instead is asserting "outcome determinative mistakes" by election officials "resulted in the disenfranchisement of a substantial number of legitimate voters...." (Appellants' Br. at 22.) The invalidation of the nineteen votes exceeded the margin of victory and changed the result of the election.

■ The absentee ballots at issue in the case before us could not have been included in a recount:

> As to the phrase "votes cast in the election" used in the statute, the plain meaning demonstrates that the legislature

meant to restrict this ground to votes actually cast and not to include potential votes that were not actually cast. However, by the word "votes," the legislature could not have meant it to include votes *illegally* cast. To impose such a meaning would render ineffectual the purpose of the statute. More than a century ago, this Court recognized that the "true gravamen of the case, whatever may be the ground of contest, is 'the highest number of legal votes.'" *Dobynus v. Weadon*, 50 Ind. 298, 302 (1875) (emphasis omitted). We hold that the word "votes," as used in the phrase "highest number of votes," means *legal* votes.

*Pabey*, 816 N.E.2d at 1149 (emphasis in original).

We note the legislature has given preferential treatment to election day voters over absentee voters:

> Under Indiana law, an absentee ballot may be irrevocably invalidated by an election official's failure to affix necessary endorsements to the ballot. Where an Election Day ballot lacks the necessary endorsements, however, the language of Indiana Code section 3–12–1–12(b) permits its inclusion in a subsequent recount. As this Court has previously noted, "[t]he importance of having the poll clerks' initials on the ballots ... insures the integrity of the voting system." And "[i]n order to keep the integrity of the system it may happen that some individual voters will be disfranchised through no fault of their own, and in situations where they have made an honest effort to vote for the offices of their choice."

*Horseman v. Keller*, 841 N.E.2d 164, 172–73 (Ind.2006) (footnotes and citations omitted).

We accordingly cannot say the trial court erred in dismissing Mansfield's *quo warranto* complaint on the ground the recount commission did nothing unlawful when it declined to count certain ballots.[8]

### 3. *Attorneys Fees*

■ McShurley's characterization of Mansfield's arguments as "specious" and "absurd" and of his claims below and on appeal as "frivolous," "groundless," "irrational," "bad faith," and "purely taken for the purpose of harassing McShurley," (McShurley Reply Br. at 6), are the basis for McShurley's argument on cross-appeal she is entitled to attorneys fees as a sanction against Mansfield.

McShurley moved for sanctions pursuant to Ind.Code § 34–52–1–1, which provides a court may in a civil action award attorneys fees to the prevailing party if a party brought the action or defense on a claim or defense that is frivolous, unreasonable, or groundless; continued to litigate the action or defense after the party's claim or defense clearly became frivolous, unreasonable, or groundless; or litigated the action in bad faith. The trial court denied the motion, and we affirm.

■ An award or denial of attorneys fees under Ind.Code § 34–52–1–1 is reviewed through a multi-step process. We review findings of fact for clear error, and we review *de novo* the trial court's legal conclusions. *Gaddis v. McCullough*, 827 N.E.2d 66, 75 (Ind.Ct.App.2005), *trans. denied* 841 N.E.2d 181 (Ind.2005). Finally,

---

**8.** Because we affirm the dismissal on that ground, we need not address the trial court's alternative basis for dismissal, i.e., that Mansfield's complaint did not allege fraud or mistake specifically enough. Nor may we address Mansfield's arguments the interpretation of the time limit in the election contest statute as mandatory violates the Open Courts and Privileges and Immunities clauses of the Indiana Constitution.

we review under an abuse of discretion standard the ultimate decision whether to award attorneys fees. *Id.*

In *Gaddis,* we reversed the denial of attorneys fees to the winning candidates, and we awarded them appellate attorneys fees in addition, because there was "no reasonable or well-grounded basis for the unsuccessful candidates' claims under the election contest statute." *Id.* at 75. None of the unsuccessful candidates' arguments, even if they had prevailed, would have allowed them to obtain relief under the election contest statute, nor was there a good faith or rational argument supporting their claim for a special election. "[T]he special circumstances of election-related litigation make us particularly sensitive to the potential for frivolous litigation." *Id.* at 75.

There, the winning candidates prevailed by substantial margins. The unsuccessful candidates cast no doubt on the outcome of the election and failed to show that anyone involved in the process—candidates or election officials—acted in anything other than good faith. The "technical" arguments the unsuccessful candidates raised cast no doubt on who won the election. *Id.* at 76. The unsuccessful candidates alleged violations of two provisions of election law, but they did not show how they were harmed by the alleged violations. They did not prove that, had the election been conducted as they believe it should have been, the outcome might have been different, or "that the conduct of the election disenfranchised a single voter." *Id.* at 77.

Relying on the substantive arguments made above, McShurley argues Mansfield's lawsuits are sanctionable. She asserts there was never any basis for bringing an election contest petition after the statutory deadline passed, and in the *quo warranto* action Mansfield never alleged any circumstance that made it impossible to determine who received the most legal votes.

Mansfield relies on his substantive arguments for the premise both of his actions are meritorious. We affirm the trial court because Mansfield presented legitimate arguments before both this court and the trial court. In *Gaddis* the unsuccessful candidates did not prove the outcome of the election could have been different had it been conducted as they believe it should have been. By contrast, the record in the case before us reflects the initial election showed more voters cast ballots for Mansfield than for McShurley. The final election result turned on the exclusion of the ballots that were not properly initialed by election officials. We accordingly reject McShurley's allegations there was anything "absurd ... and irrational," (McShurley Br. at 35), about Mansfield's complaints, or that they were "a sham," (*id.*), or "flagrantly frivolous, unreasonable, and groundless," (*id.* at 35–36). McShurley is not entitled to attorneys fees.

We affirm the trial court.

ROBB, J., and BRADFORD, J., concur.