711 S.E.2d 270

**STATE of West Virginia ex rel. Donald HICKS, Clerk of the McDowell County Commission, Petitioner Below, Appellant**

**v.**

**A. Ray BAILEY and the McDowell County Commission, Respondents Below, Appellee.**

**No. 35646.**

Supreme Court of Appeals of West Virginia.

Submitted Feb. 9, 2011.

Decided May 26, 2011.

Sidney H. Bell, Prosecuting Attorney's Office, Welch, WV, for Appellant.

Michael W. Carey, David Pogue, Carey, Scott, Douglass & Kessler, Charleston, WV, for Appellee.

McHUGH, Justice:

The matter before us was brought by Donald Hicks in his capacity as Clerk of the McDowell County Commission (hereinafter "Appellant") as an appeal from the November 9, 2009, order of the Circuit Court of McDowell County in a mandamus proceeding. By the terms of this order, the McDowell County Commission [1] is directed to reimburse the attorney fees of A. Ray Bailey (hereinafter "Appellee") as the prevailing party in an election contest. Appellant maintains that the trial court abused its discretion by awarding attorney fees and ordering payment of the fees by the county commission, which was not a party to the election contest. He supports his position by saying that the award was made absent any statutory authority and without any finding by the court that the county commission or contestant acted in bad faith or with vexatious or oppressive purposes. He further argues that even if the authority existed, the trial court erred by entering the order without conducting a hearing or reviewing itemized statements of the fees. Having completed our review of the arguments and law governing this matter, we reverse the order of the circuit court directing payment of attorney fees by the county commission.

## I. Factual and Procedural Background

Appellee defeated incumbent Carl Urps for the open seat on the McDowell County Commission in the November 2008 general election.[2] Mr. Urps timely filed a "Notice of Election Contest" with the McDowell County Commission [3] challenging Appellee's eligibili-

---

1. The McDowell County Commission was a named respondent in the mandamus proceeding below; the Commission has not participated in this appeal.

2. Appellee defeated Mr. Urps for the democratic nomination in the primary election; Mr. Urps ran in the general election as a write-in candidate.

3. *See* W.Va.Code § 3–7–7 (designating county commissions as the entity to decide contested elections of all county and district officers).

ty for election to the seat based on constitutional residency limitations.[4] In turn, Appellant in his capacity as Clerk of McDowell County, filed a petition for writ of mandamus in the circuit court essentially maintaining the futility of any resolution of the election challenge by the two sitting members of the county commission. A rule to show cause was issued. Following the recusal of both sitting circuit court judges, a special judge was appointed by this Court to preside over the mandamus action.[5] Following an evidentiary hearing, an order was entered February 3, 2009, denying relief in mandamus based upon the court finding that the evidence did not establish that Appellee was disqualified on residency grounds from serving on the county commission. An amended order was issued shortly thereafter on February 11, 2009, to correct a clerical error. After post judgment motions were denied, the March 26, 2009, final order of the court affirmed the previous ruling regarding the election outcome. Appellant and Mr. Urps filed a petition with this Court seeking review, which was refused by order dated June 3, 2009.

In October 2009, Appellee filed a motion in the circuit court styled "Motion for an Order Directing the McDowell County Commission to Pay the Attorney Fees and Costs of Respondent A. Ray Bailey." [6] Over Appellant's objections and without hearing, the lower court entered an order on November 9, 2009, awarding attorney fees to Appellee along with costs associated with successfully defending the election contest.[7] The order directs that payment of the attorney fees be made by the McDowell County Commission.[8]

Appellant seeks review of the attorney fees provisions of the November 9, 2009, order through the present appeal.

## II. Standard of Review

█ We have previously stated that an award of attorney fees in a mandamus action is reviewed under an abuse of discretion standard. *Martin v. West Virginia Div. of Labor Contractor Licensing Bd.*, 199 W.Va. 613, 616, 486 S.E.2d 782, 785 (1997) (citing *State ex rel. Bd. of Educ. v. McCuskey*, 184 W.Va. 615, 617, 403 S.E.2d 17, 19 (1991)). Nevertheless, "[w]here the issue on an appeal from the circuit court is clearly a question of law . . ., we apply a *de novo* standard of review." Syl. Pt. 1, in part, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995). We will use these standards as guides in our consideration of the issues raised.

## III. Discussion

Appellant assigns several errors to the lower court's handling of the award and payment of attorney fees in this case. However, Appellant's essential argument is that there was no legal basis for ordering the county commission to indemnify the attorney fees Appellee incurred in the election contest. He stresses that there is no statutory authorization for the payment of the fees, and no bad faith or vexatious or oppressive purpose was proven.

█ We examined the circumstances under which an award of attorney fees is proper in *Sally–Mike Properties v. Yokum*, 179 W.Va. 48, 365 S.E.2d 246 (1986). We concluded in syllabus point two of this case

4. In his challenge, Mr. Urps alleged that Appellee was ineligible under the provisions of Article 9, § 10 of the West Virginia Constitution to run for the position because Appellee lived in the same district as a sitting county commissioner.

5. Mercer County Judge William J. Sadler was temporarily assigned to hear this matter.

6. As reflected in the November 9, 2009, order, the delay in requesting a court award of attorney fees was due to Appellee finding no success in seeking reimbursement for attorney fees directly from the McDowell County Commission after appeal to this Court was refused. The direct approach twice proved unavailing due to a dead-

lock between the other two county commissioners.

7. *See* W.Va.Code § 3–7–9 (providing for payment of costs in election contests).

8. The order relates that costs other than attorney fees incurred by the prevailing party in an election contest are to be paid by the losing party pursuant to West Virginia Code § 3–7–9, and states that "Carl Urps is responsible for any costs." However, unlike attorney fees for which the order contains a specific ruling directing the McDowell County Commission to pay Appellee, no like ruling directs Mr. Urps to pay Appellee the costs incurred due to the election contest.

that "[a]s a general rule each litigant bears his or her own attorney's fees absent a contrary rule of court or express statutory or contractual authority for reimbursement." We further recognized in syllabus point three of *Sally–Mike Properties* that even without express statutory authorization, "[t]here is authority in equity to award to the prevailing litigant his or her reasonable attorney's fees ... when the losing party has acted in bad faith, vexatiously, wantonly or for oppressive reasons."

Appellee maintains that the lower court correctly relied on the principles established in *Powers v. Goodwin,* 170 W.Va. 151, 291 S.E.2d 466 (1982), to arrive at the conclusion that as a public official Appellee was entitled to indemnification of attorney fees in this case.

■ The case of *Powers v. Goodwin* involved a removal action against sitting county commissioners who authorized reimbursement of attorney fees from public monies for a fellow county commissioner who had been criminally charged with misuse of a county telephone credit card. During our discussion in *Powers,* we recognized the existence of statutory authority for a county commission to award attorney fees in the general provision of West Virginia Code § 7–1–3 [1923] regarding the powers and duties of county commissions to "have the superintendence and administration of the internal police and fiscal affairs of their counties." 170 W.Va. at 157, n. 3, 291 S.E.2d at 472, n. 3. We defined the scope of this authority in syllabus point three of *Powers.* After holding that the rules governing indemnification of attorney fees by a public official are the same in both civil and criminal contexts, we set forth the

necessary prerequisites for appropriation of public monies for payment of attorney fees as follows:

In order to justify indemnification [of attorney fees] from public funds *the underlying action must arise from the discharge of an official duty* in which the government has an interest; the officer must have acted in good faith; and the agency seeking to indemnify the officer must have either the express or implied power to do so.

170 W.Va. at 153, 291 S.E.2d at 468 (emphasis added).

■ In applying these factors to the present case we find that despite the lower court's conclusion that Appellee acted in good faith, it is readily apparent that the election contest did not stem from the discharge of any official duty.[9] Further, we find no express or implied authority for the county commission to indemnify the attorney fees of someone pursuant to the provisions of West Virginia Code § 7–1–3[10] unless the person is discharging an official duty, nor is there any general statutory provision for award of attorney fees in election contests.[11]

The lower court acknowledged the difference in the factual situation present in *Powers.* The November 9, 2009, order reflects the reason the lower court extended indemnification of attorney fees to an election contest. The order quotes the following observation from the *Powers* opinion:

... the voters have a legitimate interest in protecting their duly elected officials from being hectored out of office through the constant charge of bankrupting attorneys' fees on their own personal resources. One

9. Appellee did not take the oath of office for the seat to which he was elected until February 11, 2009, the date the order correcting the clerical error in this case was entered.

10. West Virginia Code § 7–1–3 has been amended twice since the decision in *Powers,* however, the language regarding general powers and duties of county commissions relied upon in *Powers* has not been changed.

11. The Legislature has provided the manner in which certain costs incurred in election contests may be recovered from the losing contestant, but such recovery does not involve expenditure of

public funds. W.Va.Code § 3–7–9 (1963). We further note that there is a general statutory provision for reimbursement of attorney fees in West Virginia § 11–8–31(a) (1985), which was enacted three years after *Powers v. Goodwin* was decided. This statute does not mention election contests and limits authorization for expenditure of public funds for reimbursement of attorney fees by the governing body of the governmental entity of which a person is an official to two specific instances: (1) when the official successfully defends against a removal action, or (2) when the official prevails in an action alleging wrongful expenditure of public money.

of the obligations of a duly elected public official is to continue to discharge the office to which he was elected since it can reasonably be assumed that he was elected because of his public stand on issues of concern to the voters. Consequently, continued service in an elected position is not a question in which only the officeholder has a personal concern; in a democratic government predicated upon the competition of policies and ideas through different candidates for elected office, the public itself has an interest in seeing persons elected by a majority continue in office. [70 [sic] W.Va.] at 161, 291 S.E.2d at 476. The order then contains the lower court's reasoning that "if the public has an interest in seeing persons elected by a majority continue in office, it follows that the public has an interest in seeing such persons take office in the first place."

Courts in New Jersey and Florida faced with similar circumstances have concluded that attorney fees generally are not recoverable from public monies for election contests.[12] In the New Jersey case of *Matthews v. Atlantic City*, 196 N.J.Super. 145, 481 A.2d 842 (N.J.Super.L.Div.1984), *aff'd*, 196 N.J.Super. 338, 482 A.2d 530 (N.J.Super.App.Div.1984), *certif. den'd*, 99 N.J. 213, 491 A.2d 708 (1984), the award of attorney fees in a suit challenging a mayoral election was examined. The court in *Matthews* found that the city was precluded from paying the legal expenses incurred by a former mayor who had successfully defended an election contest where the allegations of the contest did not implicate any of the official duties of the mayor. The court observed that since official duties were not involved in an election contest, the interests at stake in these proceedings are purely personal. This reasoning was drawn from several previous state court decisions finding that the policy for indemnification of public officials only extends to expenses arising from the performance of an official duty

or actions taken in an official capacity. *Id.* at 844–45.

In *Markham v. State, Department of Revenue*, 298 So.2d 210 (Fla.App.1974), *cert. den'd*, 309 So.2d 547 (Fla.1975), the court was faced with the question of whether there was any right to reimbursement of attorney fees by the prevailing party in an election contest involving the office of tax assessor. After acknowledging that public funds may not be expended for other than public purposes, the court reasoned that the election contest had no direct impact on the office, functions and duties of tax assessor but rather was "purely personal" as a "legal battle between the political contestants in the election contest." *Id.* at 212. The characterization of the interests at issue in an election contest as "purely personal" was based on long-standing precedent established by the Florida Supreme Court in *Peck v. Spencer*, 26 Fla. 23, 7 So. 642 (1890). Importantly, in affirming the denial of the reimbursement of attorney fees to the party prevailing in the election contest, the court in *Markham* explained that while a valid public interest exists in seeing that the person taking office is properly elected, such interest "goes only to the demand that the properly elected candidate hold office, not that any particular person hold the office. . . . [The contest] is personal between the candidates and litigants and is not an official duty of the candidate holding the office and serves no public purpose justifying the expenditure of public funds incident thereto." *Id.* at 214.

We find the reasoning in these cases persuasive and consistent with the precedent we articulated in *Powers* regarding award of attorney fees from public monies. The lower court in the case before us extended the public interest reasoning applied in *Powers* to election contests even though no performance of an official duty or function of the public office of county commissioner was at issue in the election contest. Further, the Legislature has not expressly or impliedly

---

**12.** Research reveals that courts in several states are guided by statutes governing how and under what circumstances reimbursement of attorney fees in election contests may occur. *See, e.g. Cacioppo v. Eagle County School Dist. Re–50J*, 92 P.3d 453 (Colo.2004); *Davis v. Dunn*, 286 Ga. 582, 690 S.E.2d 389 (2010); *Mansfield v.* *McShurley*, 911 N.E.2d 581 (Ind.App.2009); *Legislative Coordinating Council v. Stanley*, 264 Kan. 690, 957 P.2d 379 (1998); *Big Spring v. Jore*, 326 Mont. 256, 109 P.3d 219 (2005); *State ex rel. Poddar v. Lee*, 196 Or.App. 34, 100 P.3d 747 (2004).

provided that election contests otherwise bear a sufficient public purpose to warrant the expenditure of public funds for attorney fees, and such policy determination is solely within the province of the Legislature. Accordingly we hold that in an action challenging the outcome of an election for public office, indemnification of the attorney fees of the prevailing candidate of such election from public funds is not justified because an election contest does not arise from a candidate's performance of any official duty of the public office in question.

As a result, we conclude that the lower court erred as a matter of law and we reverse the order of the circuit court directing that the McDowell County Commission pay from public monies attorney fees of the prevailing party in the underlying election contest.

### IV. Conclusion

In accord with the foregoing, we reverse the November 9, 2009, order of the McDowell County Circuit Court.

Reversed.